OPINION
Willie Hutson, Jr. appeals from a judgment of the Montgomery County Court of Common Pleas which found him guilty of possession of marijuana, possession of criminal tools, carrying a concealed weapon, and having a weapon while under disability. Hutson had pled no contest to these offenses after the trial court overruled his motion to suppress.
The state's evidence at the suppression hearing established the following version of events.
On April 19, 1999, Dayton Police Officers William Ables and Rick Elworth were in a police cruiser in a United Dairy Farmers ("UDF") parking lot when they heard "extremely loud music" coming from Hutson's car and noticed his heavily tinted car windows as he drove on Main Street. When Hutson passed the UDF, the officers followed him with the intention of issuing citations for excessive noise and window tint violations. Before they effectuated the stop, one of the officers also observed a turn signal violation. They then activated their overhead lights, and Hutson stopped in a nearby alley.
Officer Elworth approached Hutson's car while Officer Ables checked the license plate through the cruiser's computer. Because of the heavily tinted windows on the car, Officer Elworth could not see into the car as he approached. Hutson rolled down his window, and Officer Elworth explained to Hutson why he had been stopped and asked for his driver's license and registration. In response, Hutson was very belligerent, refused to provide identification, verbally challenged the basis for the stop, and insisted that the officers "hurry up." Officer Elworth detected a strong odor of marijuana while he was standing alongside the car.
Eventually, Hutson reached over to the passenger side of his car for his driver's license and registration. As he did so, Officer Elworth observed what he believed to be the butt of a firearm protruding from the waistband of Hutson's pants. Consequently, Officer Elworth shared his suspicion with Officer Ables and asked Hutson to step out of the car. Hutson refused, cursed at Officer Elworth, rolled up his windows, and locked the doors. He drove away from the officers and into a nearby parking lot with the officers in pursuit. Hutson stopped in the parking lot.
Officer Elworth again ordered Hutson out of the car, and this time Hutson complied. Officer Elworth patted Hutson down because of his belief that Hutson had a weapon. Although Officer Elworth did not find a gun on Hutson's person at this time, he did discover a knife in Hutson's front pants pocket and a small bag of marijuana. Hutson was arrested for carrying a concealed weapon.
As Officer Elworth attempted to escort Hutson to the cruiser, Hutson somehow managed to roll up the car window and to lock the car. When the officers explained that they needed to inventory the car, Hutson refused to give them the keys, claiming that he did not have the keys. After several minutes, the officers took the keys from Hutson and proceeded to inventory his car. The inventory search revealed approximately $3,500 in cash, a large cat food bag containing marijuana, an Acculabs scale, and a locked .45 caliber Glock handgun, which was found under the front passenger seat.
Hutson presented a different version of events. He claimed that his music had not been playing loudly, as evidenced by the fact that he had been talking on a cellular phone at the time he was pulled over. This claim was supported by the testimony of his girlfriend's mother, with whom he was allegedly conversing as he was stopped by the officers. In fact, Hutson claimed that he had not been playing any music in the car. Hutson also testified that he had not had a gun in his waistband when he was stopped and that, because of the sweater he had been wearing, his waistband would not have been visible to the officers. Hutson stated that he had produced identification as soon as Officers Elworth had requested it, and that he had then moved his car into the parking lot to get out of the alley after telling the officers that he intended to move the car. With respect to the knife that was found in his pocket, Hutson testified that he used it as a can opener, CD opener, and cigar cutter, but that he had "[n]ever used it in a violent way at all."
Based on the items that were discovered in his car, Hutson was indicted for possession of marijuana, possession of criminal tools, carrying a concealed weapon, and carrying a weapon while under disability. The carrying a concealed weapon count was based upon the gun found under the seat of Hutson's car and not upon the knife found on his person. Hutson was also cited for a safety belt violation, a failure to signal violation, a window tint violation, and an excessive noise violation. Hutson filed a motion to suppress, arguing that the officers had not had probable cause to arrest him for carrying a concealed weapon based upon their discovery of the knife in his pocket. Thus, Hutson contended that the items discovered as a result of the inventory search of his car pursuant to his arrest were "fruit of the poisonous tree."
The trial court conducted a hearing on Hutson's motion to suppress on July 16 and 22, 1999. The trial court overruled the motion to suppress on August 26, 1999. Hutson subsequently pled no contest to the counts in the indictment. He was sentenced to an aggregate sentence of one year.
Hutson raises one assignment of error on appeal.
 THE TRIAL COURT ERRED IN FAILING TO SUSTAIN APPELLANT'S MOTION TO SUPPRESS.
Hutson contends that his motion to suppress should have been granted because "there was insufficient probable cause for the officers to conduct a pat-down search" and because the officers had lacked probable cause to arrest him for carrying a concealed weapon. Because the trial court is in the best position to weigh the evidence and to make findings of fact, we consider this assignment of error in light of the trial court's finding that the officers' testimony was credible.
Hutson's argument regarding the propriety of the police officers' search of his person for weapons is based on the faulty premise that an officer needs probable cause to conduct such a search. A police officer is permitted to conduct a protective search for weapons "where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." Terry v. Ohio (1968), 392 U.S. 1, 27, 88 S.Ct. 1868,1883. The test is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. Based on the officers' testimony that Hutson had been belligerent and uncooperative, that he had driven away from the spot of the initial traffic stop, and that Officer Elworth had seen what he believed to be a gun in Hutson's waistband, we have no doubt that the officers had a reasonable, articulable suspicion to justify searching Hutson for weapons. Hutson's argument that the evidence should have been suppressed because the officers had not had probable cause to search him for weapons — or, properly stated, because the officers lacked a reasonable, articulable suspicion that he was armed — is without merit.
Hutson further argues that the police officers did not have probable cause to arrest him for carrying a concealed weapon, which arrest precipitated the inventory search of his car. Specifically, he claims that the knife he had possessed should not have been classified as a deadly weapon.
R.C. 2923.12(A) prohibits knowingly carrying, concealed on one's person or ready at hand, any deadly weapon. R.C. 2923.11(A) defines a deadly weapon as "any instrument, device or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon." In other words, a deadly weapon is an instrument capable of inflicting death that is also either designed or specially adapted for use as a weapon or possessed, carried, or used as a weapon.State v. Sears (1980), 18 O.O.3d 126, 126. In this case, the trial court found that Officer Elworth had had probable cause to believe that Hutson's knife had been designed or specifically adapted for use as a weapon. The parties do not dispute that the knife was capable of inflicting death. Hutson claims that the trial court could not have reasonably concluded, based on the evidence presented at the suppression hearing, that the knife he had carried was designed or specifically adapted for use as a weapon.
At the outset, we note that, in considering Hutson's motion to suppress, the trial court needed only to find that the officers had had probable cause to arrest Hutson for carrying a concealed weapon. Much of Hutson's brief is addressed to cases in which the elements of carrying a concealed weapon had to be proven beyond a reasonable doubt to sustain a conviction for the offense. In our view, this distinction between probable cause and proof beyond a reasonable doubt is an important one in this case.
At the suppression hearing, Officer Elworth was qualified as an expert in knives based on his nine years of experience with crimes involving knives and his own interest in and collection of knives. Officer Elworth testified that Balisong brand knives like the one he had found in Hutson's possession were "fighting knives" based on their locking blades and "quite considerable serration," which is capable of doing "a little more damage to the tissue than what a standard blade would do." The knife had a three and one-half inch blade. Officer Elworth admitted on cross-examination that locking blades are common and that this feature does not necessarily mean that a knife is used as a weapon. He also admitted that Hutson's knife had other potential uses.
The trial court found that Officer Elworth's testimony demonstrated that he had had probable cause to believe that Hutson's knife was designed or specifically adapted for use as a weapon, and thus was a deadly weapon entitling him to arrest Hutson for carrying a concealed weapon. We agree. Officer Elworth's testimony that Balisong knives with locking blades and serrated edges are designed and typically used as fighting knives was unrefuted, even though other potential uses for the knife were explored on cross examination. We will not speculate as to whether this evidence could have supported a conviction for carrying a concealed weapon, but we are persuaded that Officer Elworth's understanding of the normal use of such a weapon established probable cause to arrest Hutson for carrying a concealed weapon.
The assignment of error is overruled.
The judgment of the trial court will be affirmed.
FAIN, J. and YOUNG, J., concur.